**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1381
_____

UNITED STATES OF AMERICA

v.

DARRYL E. COLEMAN, a/k/a T, a/k/a Tubbs, a/k/a D,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-96-cr-00539-001)
District Judge: Hon. Harvey Bartle, III
_____

Argued on November 16, 2022

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*.

(Filed: April 20, 2023)

Jacquelyne K. Phelps [Argued]
The Decarceration Collective
2045 North Biscayne Boulevard

Suite 282
Miami, FL 33137
    *Counsel for Appellant*

Jacqueline C. Romero
Bernadette A. McKeon
Robert A. Zauzmer [Argued]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————


HARDIMAN, *Circuit Judge*.

Darryl Coleman appeals an order of the District Court denying his motion for a sentence reduction. He claims the Court clearly erred in determining his statute of conviction and erred in concluding that he was not convicted of a "covered offense" under § 404(a) of the First Step Act of 2018. For the reasons that follow, we will vacate the District Court's order and remand for further proceedings.

I

Coleman was indicted in 1997 for supervising a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). A jury found Coleman guilty, and he was

sentenced to life imprisonment. Coleman was sentenced before the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), so the District Court did not specify which provision of 21 U.S.C. § 841(b) grounded his conviction and sentence. Coleman appealed, and we affirmed without comment. *United States v. Coleman*, 191 F.3d 446 (3d Cir. 1999) (table).

After unsuccessfully seeking habeas relief and a sentence reduction under amendments to the Sentencing Guidelines, Coleman filed a motion for a reduced sentence under § 404(b) of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). He claimed he had been sentenced for a "dual-object conspiracy involving both crack and powder cocaine," which he asserted was a "covered offense" under § 404(a) of the First Step Act. App. 189. Noting that the record does not specify the statutory penalty provision under which he was convicted and sentenced, Coleman argued that he was sentenced in part for crack-related conduct. The Government opposed the motion, arguing that Coleman was ineligible for § 404(b) relief because he was not convicted of a crack offense.

The District Court denied Coleman's motion. It acknowledged the record's various references to crack, as well as the fact that Coleman was found "responsible for 1.5 kilograms of crack cocaine at his sentencing," but concluded that Coleman was ineligible for § 404(b) relief because he "was not . . . *convicted of an offense* involving crack cocaine." App. 15 (emphasis added).

Coleman timely appealed.

3

II[1]

We review de novo whether a movant is eligible for § 404(b) relief. *United States v. Jackson*, 964 F.3d 197, 201 (3d Cir. 2020). Coleman's eligibility turns on whether he was convicted of a "covered offense," which we have held means his "statute of conviction." *Id.* at 202.

The District Court did not determine Coleman's statute of conviction explicitly. Still, we agree with the parties—and we hold—that the District Court's determination of Coleman's statute of conviction is subject to review only for clear error.

Our decision to apply clear error follows from our recent decision in *United States v. Bentley*, 49 F.4th 275 (3d Cir. 2022). There, the district court adjudicated a post-conviction sentencing motion by reviewing the "records of the convicting court" to conclude that Bentley was convicted under one statutory subsection rather than another. *Id.* at 282, 291. Coleman too has filed a post-conviction sentencing motion. And as we explain in section III.B, resolving his motion required the District Court to review the "records of the convicting court" to determine which statutory subsection defined his conviction. *See* Coleman Br. 15 (noting that 21 U.S.C. § 841(b)(1)(A)(ii), (b)(1)(A)(iii), or both grounded Coleman's conviction).

Though the district court in *Bentley* looked to a state court's proceedings rather than, as here, its own prior proceedings, that distinction makes no difference. The

---

[1] The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3582(c)(1)(B). Our jurisdiction arises under 28 U.S.C. § 1291.

4

statutory penalty provision that grounded Coleman's sentence—and completed his statute of conviction—is a juridical fact here as in *Bentley*. In both cases the sentencing court reviewed an ambiguous record to find a fact (the relevant statutory subsection constituting the statute of conviction). And in the face of "records . . . not free from ambiguity," a "plausible" factual determination of the movant's statute of conviction "must govern." *Bentley*, 49 F.4th at 291.

III

Section 404(b) of the First Step Act authorizes courts to reduce sentences for "covered offense[s]" committed before the Fair Sentencing Act of 2010 was enacted. 132 Stat. at 5222. A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." *Id.* (§ 404(a)). As we held in *Jackson*, this violation refers to a defendant's "statute of conviction," not his conduct in committing the offense. 964 F.3d at 202. We therefore determine eligibility for § 404(b) relief by looking only to the statutory elements of the crime of conviction. *Id.* at 202 n.6. The statute of conviction for a § 841(a)(1) violation—and a § 846 violation based on § 841—is the "combination of" § 841(a)(1) and a § 841(b) penalty provision. *United States v. Birt*, 966 F.3d 257, 261–62 (3d Cir. 2020).

Coleman's violation of the conspiracy statute subjects him to the "same penalties as those prescribed for" the predicate offense. 21 U.S.C. § 846. So Coleman is eligible for a sentence reduction under § 404(b) of the First Step Act only if his statute of conviction included a § 841(b) penalty provision modified by the Fair Sentencing Act. Since Coleman's trial and sentencing record does not identify a

5

penalty provision, the District Court had to determine Coleman's statute of conviction.

## A

The Government invites us to gauge Coleman's § 404 eligibility by looking solely to the charging language in the indictment. We reject that invitation for pre-*Apprendi* cases like Coleman's.

An indictment must set forth each element of the crimes it charges. *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). Because Coleman was sentenced in 1997, before the Supreme Court's decision in *Apprendi*, the type and quantity of controlled substances for which he was responsible were not elements of his drug offenses; they were sentencing factors for the District Court to determine by a preponderance of the evidence. *See United States v. Henry*, 282 F.3d 242, 246 (3d Cir. 2002). It therefore would have made no sense for the Court to confine its inquiry to the indictment—which had no reason to distinguish powder from crack cocaine—when determining Coleman's statute of conviction. And though Coleman's superseding indictment recognizes the cocaine types as distinct, we cannot assume the same of every pre-*Apprendi* indictment charging § 846 or § 841 offenses.

The Government counters that the practice in the Eastern District of Pennsylvania at the relevant time was to not charge crack offenses as cocaine offenses: cocaine meant cocaine and crack meant crack. Even were that true—Coleman contests it—we could not assume the same of every district in the Third Circuit.

Finally, we decline the Government's invitation because our caselaw forecloses it. In *Birt*, where a post-*Apprendi* defendant's charging document stated only a § 841(a)(1) offense, we consulted the plea agreement, the Presentence Investigation Report (PSR), and the district court's sentence to determine the operative § 841(b) penalty provision. *See* 966 F.3d at 259, 262. Those sources are even more germane in a pre-*Apprendi* case like this one.

And contrary to the Government's claim, full-record review is not inconsistent with *Jackson*'s categorical approach to § 404 eligibility. When the charging document fails to specify a § 841(b) penalty provision, as it did here, we do not propose to rest Coleman's eligibility on his *actual criminal conduct*. *See Jackson*, 964 F.3d at 202 (proscribing consideration of the defendant's conduct at the § 404(a) stage). We look instead to the whole record to determine whether the District Court clearly erred in identifying the penalty provision grounding Coleman's *statute of conviction*. *See United States v. Russell*, 994 F.3d 1230, 1237 (11th Cir. 2021) (instructing district courts to determine a First Step Act movant's statute of conviction by consulting the charging document, the jury verdict or guilty plea, the sentencing record, and the final judgment). Evaluation of the sentencing transcript and final judgment is in fact critical to ascertaining Coleman's statutory penalty provision and therefore his statute of conviction. Only the District Court's findings on the drug type and quantity attributable to Coleman establish the § 841(b) penalty provision—a necessary "element[]" that, together with § 841(a), "define[s]" the crack offense. *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021). So that "finding must occur before the district court can define the substantive offense" by choosing a suitable penalty provision. *United States v. Jackson*,

58 F.4th 1331, 1336 (11th Cir. 2023). The District Court's choice of "the pertinent penalty subsection of § 841[b]" thus "complete[d] the description of the crime," *Birt*, 966 F.3d at 262 n.5, and determined Coleman's statute of conviction at sentencing. All of which tracks our holding in *Jackson* that the defendant's statute of conviction dictates his eligibility under § 404(a) of the Fair Sentencing Act.

B

The crux of Coleman's appeal is his contention that he was convicted of a dual-object conspiracy involving both powder and crack cocaine. This argument finds some support in the record. Take first the superseding indictment. Its "manner and means" section alleges that, as "part of the conspiracy," Coleman and his co-defendants "would and did process kilogram quantities of cocaine into cocaine base, also known as 'crack.'" App. 26. The indictment also alleges that the conspiracy distributed, resold, and received payment for selling crack. And its "overt acts" section alleges that the conspirators discussed how to process and distribute crack.

Second, at trial, the District Court instructed the jury that the offenses charged in the indictment "involve[d] a Schedule II narcotic controlled substance known as cocaine base or crack." App. 88.

Third, the PSR stated that some of the cocaine trafficked by the conspiracy was processed into crack for distribution.

Fourth, at the sentencing hearing, which focused on the disputed quantity of drugs attributable to Coleman as the conspiracy's leader, the parties and the District Court discussed crack. The Government sought the maximum base offense

level of 38 for the conspiracy's "involve[ment with] one and a half kilograms or more" of crack. App. 165. The Court assigned Coleman level 38 after finding that, as "co-leader of the conspiracy," he was responsible for "well in excess of one and a half kilograms of crack cocaine." App. 179.

Finally, on direct appeal, Coleman challenged the District Court's finding that he was responsible for 1.5 kilograms of crack. The Government responded that substantial evidence supported the Court's finding. The Government stated that crack was a controlled substance involved in the conspiracy. And it asserted that the "Coleman[] cocaine trafficking enterprise distributed substantial amounts of crack." Gov't Br. at 21, *United States v. Coleman*, 1998 WL 34169839 (3d Cir. Mar. 11, 1998).

In sum, the conspiracy trafficked in crack; the District Court discussed at the sentencing hearing Coleman's responsibility for the conspiracy's crack-related activities; and the parties sparred on direct appeal over the amount of crack attributable to Coleman.

The District Court acknowledged that Coleman was found "responsible for 1.5 kilograms of crack cocaine at his sentencing," but concluded that Coleman was ineligible for § 404(b) relief because he "was not . . . *convicted of an offense* involving crack cocaine." App. 15 (emphasis added). It reached that conclusion even though Coleman's conspiracy "involved" crack cocaine. *See, e.g.*, App. 15–16 ("[T]his court found that . . . Coleman was *involved with* 1.5 kilograms of crack cocaine.") (emphasis added). It might follow from that conclusion that neither § 841(b)(1)(A)(iii) nor § 841(b)(1)(B)(iii)—the crack-offense penalty provisions the Fair Sentencing Act modified, *see Terry*, 141 S. Ct. at 1862–

9

63—formed the statutory basis for Coleman's sentence.[2] That would leave one powder-offense provision, § 841(b)(1)(A)(ii), to constitute Coleman's statute of conviction.

But the District Court did not identify Coleman's possible penalty provision(s)—§ 841(b)(1)(A)(ii), § 841(b)(1)(A)(iii), or both. Nor did the Court square its conclusion that Coleman was not convicted of a crack offense with the record evidence of crack. Instead, the Court appeared to reason that because Coleman merited a life sentence on account of his powder-cocaine-related conduct alone, he was ineligible for discretionary § 404(b) relief. Because the Fair Sentencing Act modified the statutory penalties for "*all* [§ 841(b)(1)] subparagraph (A) and (B) [crack] offenders," *Terry*, 141 S. Ct. at 1863 (emphasis added), however, the District Court should have proceeded to consider a discretionary sentence reduction under § 404(b) unless the Court determined that Coleman's statute of conviction did not involve § 841(b)(1)(A)(iii)—whether or not Coleman would succeed on the merits under § 404(b). The District Court was right to consider the "actual quantity of drugs a defendant possessed"—but it should have done so at the discretionary § 404(b) merits stage, not as part of the § 404(a) eligibility determination. *Jackson*, 964 F.3d at 204. In considering Coleman's motion, the Court appeared to conflate its § 404(a) and § 404(b) analysis.

---

[2] Neither § 841(b)(1)(B)(iii) nor § 841(b)(1)(C) appears to have been Coleman's penalty provision. Neither provision could have supported Coleman's life sentence unless the Court found that the conspiracy resulted in someone's death or serious bodily injury, and the record in this case does not indicate that finding.

The bottom line is that the District Court did not expressly identify the relevant § 841(b) provision that grounded Coleman's sentence. And its failure to do so precludes us from reviewing its decision for clear error (or any other standard, for that matter).

We conclude by providing guidance to the District Court on remand. If the Court reaffirms what may have been its implicit factual determination, it should acknowledge the record's crack references and explain why Coleman was not convicted of a crack offense. Perhaps the Court sentenced Coleman for his "relevant conduct," a category embracing not only controlled substances "involved 'during the commission of the offense of conviction,'" but also any that were "part of the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Boone*, 279 F.3d 163, 178 (3d Cir. 2002) (*quoting* U.S.S.G. § 1B1.3(a)(1)(B), (a)(2)). The Guidelines required the Court to determine whether the drugs involved in the conspiracy were powder cocaine, crack, or both, as well as the amount of each, "regardless of whether the judge believed that [Coleman's] crack-related conduct was part of the 'offense of conviction.'" *Edwards v. United States*, 523 U.S. 511, 514 (1998) (*citing* U.S.S.G. § 1B1.3(a)). The Guidelines, in other words, expressly distinguished between criminal liability—on which Coleman's § 404 eligibility turns—and the "principles . . . of sentencing accountability": § 1B1.3(a) focuses on the "specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, *rather than on whether the defendant is criminally liable for an offense*." U.S.S.G. § 1B1.3, cmt. n.1 (1995) (emphasis added). These principles might help explain how Coleman could be found "responsible

11

for 1.5 kilograms of crack cocaine" at sentencing yet not be convicted of a crack offense. App. 15.

IV

Like the parties, we think the District Court's memorandum might fairly be read to include the implicit factual determination that § 841(b)(1)(A)(ii) was the only penalty provision on which Coleman's sentence was based. And such a finding would mean that Coleman was not convicted of a "covered offense" under § 404(a) of the Fair Sentencing Act. Yet the Court's memorandum is silent on the matter, so we have no basis to review its factual finding. Prudence therefore requires us to vacate the District Court's order denying Coleman's motion for a sentence reduction and remand the case for further proceedings consistent with this opinion.[3]

---

[3] We briefly dispatch two of Coleman's other arguments to promote judicial economy. Coleman claims the District Court's factual finding outside his presence "amounted to a resentencing" that violated Rule 43 of the Federal Rules of Criminal Procedure. Coleman Br. 14. We disagree because in-person resentencing hearings are not required to adjudicate First Step Act motions. *United States v. Shields*, 48 F.4th 183, 194 (3d Cir. 2022). Coleman also asserts that the District Court violated his due process rights by making a factual determination—namely, as to his statutory penalty provision—outside his presence. We summarily reject this passing contention because Coleman cites no due process caselaw to support that assertion. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 248 n.5 (3d Cir. 2016).